IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Intel Corporation,

        Plaintiff,

       v.                                                                             Civil No. 14-1049 WJ/LAM

Flick Intel, LLC, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINT**

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Complaint, filed December 11, 2014 **(Doc. 16)**.  Having reviewed the parties' briefs and applicable law, the Court finds that Defendants' motion is not well taken; accordingly, it is DENIED.

BACKGROUND

This is a trademark infringement case.  Plaintiff Intel Corporation (hereinafter "Plaintiff" or "Intel") alleges that Defendants FlickIntel, LLC, et al, (hereinafter "Defendants") are using, without authorization, the trade name and trademark "FLICKINTEL" in connection with the use and licensing of technology for linking on-screen items to data sources and remote applications for use with computers, televisions, and mobile phones, among other devices.[1]   Intel contends that, by using a trade name and trademark that wholly incorporates and emphasizes the world

---

[1] The name "FlickIntel" is derived from two separable word elements: "Flick," which has a dictionary definition as a noun meaning movie; and "Intel," which is an abbreviation for "intelligence" and which in turn has a definition as a noun meaning information or news.  According to its website (www.flickintel.tv), the technology would offer a user information on anything that appears on-screen, as described on the website technology tab:

> For example, a person watching television can "click" an on-screen item such as: a cool car; an athlete; or a shape changing robot. A FlickIntel℠ enabled system can respond by: providing a marketing brochure about the car; statistics and news about the athlete; or a presentation of shape changing robot toys along with purchasing opportunities. The person can receive the response on the television screen, on a different television screen, on a computer, or on a cell phone.

famous "INTEL" trademark, Defendants have caused and will likely continue to cause confusion suggesting that Intel is the source or sponsor of the Defendants' goods or services, or that there is an association between Intel and the Defendants.  Intel also claims that the infringement is likely to cause harm and dilution of the famous "INTEL" trademark.

The Complaint asserts six counts of trademark infringement, seeks injunctive relief and damages under the federal Lanham Act (15 U.S.C. §§ 1051, et seq.), the New Mexico Unfair Practices Act and common law trademark infringement as follows: Trademark Infringement  15 U.S.C. §1114 (Count I); False Designation of Origin, 15 U.S.C. §1125(a) (Count II); Federal Trademark Dilution, 15 U.S.C. §1125(c) (Count III); Trademark Dilution in Violation of the New Mexico Trademark Act (NMSA 1978 57-3B-15) (Count IV); Trademark Infringement under New Mexico Common Law (Count V); and Violation of the New Mexico Unfair Practices Act, NMSA 1978, § 57-12-1 (Count VI).

## DISCUSSION

Defendants seek dismissal of all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.     Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this

plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted). The Tenth Circuit has explained,

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570) (internal citations omitted).  Even though the allegations are accepted as true, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  For resolving a rule 12(b)(6) motion, a court accepts as true all well-pleaded factual allegations in the complaint, views those allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Trademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together as an action brought under 15 U.S.C. § 1125(a)(1)(B), commonly known as section 43 of the Lanham Act.  *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1050 (10th Cir, 2008) (citations omitted).  The Lanham Act addresses the specific problem of consumer confusion about the source of goods and services created by the unauthorized use of trademarks.  *Id.* at 1053-1054; (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of

3

another's product as his"). Unless there is a competing good or service labeled or associated with the plaintiff's trademark, the concerns of the Lanham Act are not invoked. *Id.* (citing *Lang v. Ret. Living Pub'g Co., Inc.*, 949 F.2d 576, 582–83 (2nd Cir.1991) ("[T]he Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another).

## II.     Consideration of Material Outside the Complaint

Defendants' motion to dismiss includes several exhibits which are outside of the pleadings, such as: Declaration of Richard Krukar (Ex. A), with attached exhibits; Intel's Opposition in the Trademark Trial and Appeal Board proceeding ("TTAB") (Ex. C); Defendants' interrogatory responses in the TTAB (Ex. D); and Intel's meet and confer letter in the TTAB proceeding (Ex. E).   Plaintiff does not oppose the Court's consideration of Exhibit B, which is Defendants' FLICKINTEL trademark application because the Complaint directly cites to this application in the Complaint (¶31).

In general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.2002).   The district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.  *Id.*   The Court finds none of these exhibits central to Plaintiff's trademark infringement claims and will not consider any of these exhibits except for Exhibit B because that exhibit is incorporated in the allegations in the Complaint.

## III.    Trademark Infringement, 15 U.S.C. §1114 (Count I)

Defendants contend that Intel has not sufficiently pled trademark infringement under 15 U.S.C. §1114 because it has not identified a competing good or service and because Intel has not

explained how a specific use of the FlickIntel mark infringes on any single one of Intel's trademarks.  For example, to state a claim for infringement of the mark having U.S. Trademark registration No. 1,022,563, Defendants insist that Intel must allege that there is a microcomputer, microcontroller, or microprocessor in Class 9 bearing the FlickIntel mark as a designation of source.  *See* Doc. 1-1, p. 6.

The Lanham Act provides a cause of action for the holder of a registered trademark against anyone employing a colorable imitation of the mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(1).  "To state a trademark infringement claim under the Lanham Act, a plaintiff must allege facts showing that (1) its mark is protectable, and (2) the defendant's use of an identical or similar mark in commerce is likely to cause confusion among consumers." *Navajo Nation v. Urban Outfitters, Inc.,* 935 F.Supp.2d 1147, 1168 (D.N.M. 2013)(citing *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004)).  The complaint clearly alleges that the INTEL trademark is a protectable mark, and Defendants do not appear to dispute this.  Compl., ¶ 20, Exs. A-T).  Thus, there is no doubt about the validity of the registered INTEL trademark. *See* 15 U.S.C. §1115(b) (incontestable registrations are "conclusive evidence of the validity of the registered mark, and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce").  *See also Urban Outfitters,* 935 F.Supp.2d at 1160-1161.

The Tenth Circuit has identified six "nonexhaustive" factors for evaluating whether a likelihood of confusion exists between two marks: (1) the degree of similarity between the

parties' marks; (2) the intent of the defendant in adopting its mark; (3) evidence of actual confusion; (4) the similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.  *Sally Beauty Co., Inc. v. Beauty Co., Inc.*, 304 F.3d 964, 972 (10th Cir. 2002); *Urban Outfitters*, 935 F.Supp.2d at 1161. The list is not exhaustive, nor is any single factor dispositive.  *Team Tires Plus, Ltd. v. Tires Plus, Inc.,* 394 F.3d 831, 833 (10th Cir. 2005).

A.     Similarity in Marks

In considering the likelihood of confusion, the similarity of the marks and parties is the "heart of [the] analysis."  *King of the Mountain Sports, Inc. v Chrysler Corp.,* 185 F.3d 1084, 1090 (10th Cir. 1999).   Similarity bears on the appearance of the marks, the pronunciation of words used, verbal translation of the designs involved, and suggestion.  *Urban Outfitters,* 935 F.Supp.2d at 1161 (citing *Sally Beauty Co.,* 304 F.3d at 972).

The Complaint includes allegations describing the similarity between the INTEL mark and Defendants' mark, for example:

- "[t]he FLICK INTEL trade name and the FLICKINTEL trademark wholly incorporate and emphasize the INTEL trademark, adding only 'FLICK,' a descriptive term for a movie." (Complaint, ¶ 29.)

- "The Flick Intel Defendants further emphasize the INTEL element of their marks through selective use of capitalization, as shown on the Flick Intel website, and at times separate the "FLICK" and "INTEL" portions of the trade name and trademark with a space, such that the INTEL mark stands on its own."4 (Complaint, ¶ 29.)

- "In addition to using INTEL as a trade name, a trademark, and a service mark,  Intel also owns a large family of marks that incorporate INTEL as a prominent component of the mark," such as INTEL INSIDE®, INTEL CORE®, INTEL VPRO®, INTEL ATOM®, INTEL INTRU®, INTEL APPUP®, and INTEL COFLUENT®. (Complaint ¶¶ 21-23, Exhibits U-AE.)

- "By using a trade name and trademark that wholly incorporate and emphasize the world famous INTEL® trademark, the Flick Intel Defendants have caused and will likely continue to cause confusion that Intel is the source or sponsor of their goods or services,

or that there is an association between Intel and the Flick Intel Defendants." (Complaint, ¶ 2).

The Court finds that the Complaint sufficiently alleges a plausible claim that the INTEL mark and Defendants' mark are similar.

B.      Similarity of Parties' Products and Services

Intel alleges the following:

- Intel's products and technology are used in many applications. One of Intel's strengths is in the fields of graphics and home entertainment. Intel offers various hardware and software solutions for video content creation and editing, as well as content sharing across multiple devices. For example, the fourth generation INTEL® CORE™ processor platform includes built-in visual tools, including INTEL® IRIS™ Graphics for faster, more advanced video editing, as well as INTEL Wireless Display ("WiDi") and WiDi Media Share Software for sharing music, image, and video files wirelessly with other devices with a simple "flick" gesture. Intel also offers a Media Software Development Kit for developers, featuring a cross-platform application programming interface that includes video editing and processing, media conversion, playback, and video conferencing. Relevant customers therefore associate the INTEL brand with media technology solutions, including linking media content and controlling media remotely. (Complaint, ¶ 18);

- Defendants "offer[] the license of technology for linking on-screen items to data sources and remote applications, for use with computers, televisions, and mobile phones, among other devices." (Complaint, ¶ 28);

- Intel owns numerous U.S. trademark registrations for its family of INTEL trademarks in connection with many similar or related products and services, including "computer hardware and software for the receipt, display and use of broadcast video, audio and data signals," "video circuit boards," "audio-video circuit boards," "video graphics accelerators,""multimedia accelerators," "video processors," "computer application software," "apparatus and equipment for recording, processing, receiving, reproducing, transmitting, modifying, compressing, decompressing, broadcasting, merging and/or enhancing sound, video images, graphics, and data," "computer hardware and software for use in imaging and photographic applications, namely, organizing and manipulating images and capturing, retrieving, storing and mailing images via interconnected computer networks," and "telecommunications services, namely, electronic and digital transmission of data, documents, audio and video via computer terminals." (Complaint, ¶ 20);

- Under its INTEL INSIDE® licensing program, Intel has used the INTEL mark in connection with "personal desktop computers, laptop computers and workstations." (Complaint, ¶ 21);

- "Intel's OEM licensees have sold many billions of dollars' worth of computer products bearing the INTEL mark." (Complaint, ¶ 21).

These allegations confirm that Intel is more than just a computer chip company, as Defendants seem to assert. The Complaint alleges that the family of INTEL marks are used and have become associated within the very scope of technology offered by Defendants, in addition to fields of technology associated or affiliated with that offered by Defendants. As a result, the Court finds that it is plausible that the relevant customers will perceive some association or affiliation between the parties based on the above.

The Court agrees with Plaintiff that Defendants demand more from Intel than is legally required under Rule 12(b)(6). They insist that Intel must identify a competing good or service, and must allege a direct comparison between these competing goods. This is not necessary to allege trademark infringement, which protects against the use of a mark on *non-competing but 'related'* goods, meaning "any [good] related in the minds of consumers." *Team Tires Plus, Ltd. v. Tires Plus, Inc.,* 394 F.3d 831, 833-834 (10th Cir. 2005 (citation omitted).[2] In fact, Defendants inject another factor—a showing of directly competing goods or products—into the analysis, without any legal basis for its necessity. *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 24:14 (4th ed. 2014) ("there can be 'unfair competition' without competition"). "The vast majority of modern decisions have adopted the rule that competition is not necessary between the parties for there to be a likelihood of confusion."). *Id.*

---

[2] In *Team Tires,* the Tenth Circuit illustrated why a showing of directly competing products is not necessary, pointing out that a defendant who uses a plaintiff's milk trademark on its own competing brand of milk could infringe the plaintiff's mark, but a defendant who uses the same mark on its ice cream could not." 394 F.3d at 833.

at §24:13.  On the face of the Complaint, it is probable, and far more than plausible, that the parties' products and services can be considered related in the minds of the relevant customers.[3]

C.    Strength of the INTEL Mark

"The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion." *Sally Beauty Co*., 304 F.3d at 975 (citing *King of the Mountain Sports*, 185 F.3d at 1093).  Intel alleges:

- It is a world-famous company that has used the INTEL trade name, trademark and service mark for over forty-five years "to identify virtually its entire line of products and services." (Complaint, ¶¶ 15-16);

- "INTEL is one of the most valuable, respected and famous names and trademarks in the world. Indeed, in 2014, the INTEL brand was ranked 12th in the world in Interbrand's Best Global Brands survey, with an estimated value of over $34 billion. Numerous publications and court and tribunal decisions around the world have recognized the fame and renown of the INTEL mark." (Complaint, ¶16);

- "Intel uses INTEL as its 'house mark' on or in connection with virtually every product and service it sells. In 2013 alone, Intel sold over $52 billion of INTEL-branded products and services." (Complaint, ¶ 19);

- Intel creates products and technologies that have become essential parts of governments, businesses, schools, and homes everywhere. (Complaint, ¶17).

The allegations in the Complaint sufficiently allege that the INTEL mark is distinctive and very strong.

D.    Allegations of Intent in Adopting Plaintiff's Mark

---

[3]   Defendants cite to *Utah Lighthouse* to argue that Intel "must identify a competing good or service for every one of its asserted marks."  However, as Intel correctly notes, this statement is derived from dicta in that case, which involved a summary judgment motion, and not a motion to dismiss.  Also, the Tenth Circuit's reference to "a competing good or service" was an attempt to distinguish use of a mark in connection with the sale of goods or services as opposed to merely using a mark to make a comment on a party's goods or services.  *See* 527 F.3d at 1054 ("In our view, the defendant in a trademark infringement and unfair competition case must use the mark in connection with the goods or services of a competing producer, not merely to make a comment on the trademark owner's goods or services.").

"One who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that the public will be deceived. All doubts must be resolved against him." *Sally Beauty Co.*, 304 F.3d at 973 (citing *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983)). Plaintiff alleges the following, which the Court must assume as true:

- "As a consequence of the extensive sales, advertising, promotion, and use of the INTEL and INTEL formative trademarks, Intel has developed enormous recognition for its products and service under the INTEL mark and has acquired and enjoys an immensely valuable reputation and tremendous goodwill under the mark." (Complaint, ¶ 27);

- "Flick Intel and the Flick Intel Members were aware of Intel's business and its INTEL mark prior to the adoption and use of the FLICK INTEL trade name and the FLICKINTEL trademark." (Complaint, ¶ 34);

- "Flick Intel and the Flick Intel Members either had actual notice and knowledge, or had constructive notice, of Intel's ownership and registrations of the INTEL mark pursuant to 15 U.S.C. § 1072 prior to Flick Intel's adoption and use of the FLICK INTEL trade name and the FLICKINTEL trademark." (Complaint, ¶ 35);

- "Flick Intel and the Flick Intel Members are using the FLICK INTEL trade name and the FLICKINTEL trademark, in connection with the sale of Flick Intel's products and services, without consent and with knowledge of Intel's rights." (Complaint, ¶ 36);

- The Flick Intel Members "made false or misleading representations of association or endorsement by using the FLICK INTEL trade name and FLICKINTEL trade mark" in commerce "with knowledge that it would cause confusion or misunderstanding as to affiliation, connection or association with Intel, Intel's licensees, or the goods and services of Intel and Intel's licensees." (Complaint, ¶ 65).[4]

E.  Evidence of Confusion

---

[4] While allegations of awareness or intent factor into a likelihood of confusion analysis, federal courts have held that proof of defendant's intent to deceive or confuse is not required for infringement of a federally registered mark. *McCarthy*, § 23:107; *see also Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1393 (9th Cir. 1993). Federal trademark law allows for remedies against "innocent infringement" by printers and publishers, *see, e.g.,* 15 U.s.C. §1114(2)(A), as well as other remedies specifically reserved for "willful infringement" where deception may be relevant. *See, e.g., Rolex Watch USA, Inc. v. Meece,* 158 F.3d 816, 823 (5th Cir. 1998) ("Willful infringement carries a connotation of deliberate intent to deceive"), *cert. denied,* 510 U.S. 815 (1993); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 2007 WL 1771559 (D.Colo. 2007).

Defendants contend that the Complaint does not adequately address the likelihood of confusion factors because Intel did not allege actual confusion between Intel's product and Defendants' product. Doc. 16 at 8. While evidence of actual confusion is listed as a factor in the analysis, *see Sally Beauty Co.,* 304 F.3d at 974, actual confusion is not necessary to prevail on a trademark infringement claim, although it is a good indication of likelihood of confusion. *Id.* Without the benefit of discovery, it is premature to expect *evidence* of actual confusion in a motion to dismiss. However, Intel has certainly alleged the likelihood that Defendants' use of the FLICKINTEL mark will likely cause confusion. *See, e.g.,* Complaint, ¶¶ 2, 38, 41 and 60. Such allegations meet the plausibility requirements of *Twombly* to withstand dismissal under Rule 12(b)(6).

Accordingly, the Court finds that Intel has sufficiently pled the factors for likelihood of confusion in the Complaint in that Intel has pled more than sufficient facts to show that Defendants' use of the FLICK INTEL trade name and the FLICKINTEL trademark is likely to cause confusion among consumers.

**III.    False Designation of Origin, 15 U.S.C. §1125(a)(1)(A) (Count II);**

Defendants contend that Intel fails to state a claim under §1125(a)(1)(A) of the Lanham Act, which allows a civil action for liability for any person who "uses in commerce any word, term, name, symbol, or device . . ." which:

> is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. §1125(a)(1)(A).[5]  Thus, a plaintiff must show that the alleged infringer used the plaintiff's mark "in connection with any goods or services."  This is commonly described as the commercial use requirement.  *Utah Lighthouse,* 527 F.3d at 1052.  Relying on *Utah Lighthouse,* Defendants interpret this provision as requiring Intel to identify a <u>specific good or service</u> which is in commercial use, but neither the statute nor *Utah Lighthouse* requires this.  The plaintiff in *Utah Lighthouse* was a bookseller whose mission was to sell books that critique the church of Jesus Christ of Latter-day Saints ("LDS Church").  Defendant was a volunteer organization that responded to criticisms of the LDS Church.  Both parties used websites providing online publications on the subject of the LDS, and the similarity in these websites spawned the lawsuit.  The Tenth Circuit made a point of distinguishing between "the merely jurisdictional 'in commerce' requirement . . . and the 'in connection with any goods and services' requirement that establishes a violation of . . . the Lanham Act." 527 F.3d at 1054.  The "in connection with any goods and services" in §1125(a)(1) required that the use of a mark must be based on facts "other than the mere use of the Internet." *Id.*  The court noted that it was not enough merely to "make a comment on the trademark owner's goods or services." *Id.* at 1053.

In the *Utah Lighthouse* case, the defendants' website contained no advertising and offered no goods or services for sale.  Instead, the website included external hyperlinks, each of which pointed to the website of an organization at Brigham Young University, to the website of the LDS Church, or to defendants' homepage, or the website of the LDS Church.  The Tenth Circuit affirmed summary judgment in favor of the alleged infringer, concluding that defendants'

---

[5] Count II of the Complaint alleges "False Designation of Origin" under 15 U.S.C. §1125(A).  The Court assumes Plaintiff refers to §1125(a)(1)(A), since the relevant "false designation" language is contained in §1125(a)(1), and also because §1125(a)(1)(B) relates to commercial advertising or promotion rather than confusion in affiliation or origin which is described in §1125(a)(1)(A).

use of plaintiff's trademark was not in connection with any goods or services.[6] The instant case is on different factual ground. Unlike the website at issue in *Utah Lighthouse*, Intel alleges in the very first paragraph in the Complaint assertions that satisfy the jurisdictional "in commerce" requirement for trade infringement under §1125:

> This action arises from unauthorized use of the trade name and trademark FLICKINTEL in connection with the use and licensing of technology for linking on-screen items to data sources and remote applications for use with computers, televisions, and mobile phones, among other devices, by Flick Intel, LLC ("Flick Intel") and its members Richard Krukar, Luis Ortiz, and Kermit Lopez (Krukar, Ortiz and Lopez collectively referred to herein as "Flick Intel Members") doing business in the State of New Mexico (Flick Intel and Flick Intel Members collectively defined herein as "Flick Intel Defendants").

Complaint, ¶ 1. In addition, Intel also alleges that:

> Such unauthorized use of the FLICK INTEL trade name and the FLICKINTEL trademark falsely suggests that the products and services are connected with, sponsored by, affiliated with, or related to Intel, and constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

Complaint, ¶ 44. This language is more than a mere comment on Intel's goods or services and sufficiently alleges that Defendants are using their mark in connection with goods and services, described in ¶ 1 as the "use and licensing of technology for linking on-screen items to data sources and remote application applications" for devices. Intel also refers to Defendants' application to register the mark FLICKINTEL with the United States Patent and Trademark Office which alleges a use in commerce "at least as early as 01/31/2011, and is now in use in such commerce." Complaint (¶ 31), Ex. B. These allegations satisfy the commercial use requirement under §1125(a)(1).

---

[6] The Tenth Circuit agreed "that the Internet is generally an instrumentality of interstate commerce . . . and thus that the jurisdiction of the Lanham Act constitutionally extends to unauthorized uses of trademarks on the Internet…" However, this does not mean that any use of the Internet is necessarily commercial for the purposes of the Lanham Act [as plaintiff advocates]. 527 F.3d at 1054.

Further, Plaintiff's allegations of likelihood of confusion also support a claim under §1125, since it has become less significant" whether the alleged infringement falls under 'false designation of origin' or 'false description or representation":

> The federal courts are in agreement that . . . "[w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'"

*Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 780 (1992).  As discussed above, the Court finds that Intel has sufficiently alleged likelihood of confusion in its Complaint and states a plausible claim under §1125(a).

## IV.     Federal Trademark Dilution, 15 U.S.C. §1125(c) (Count III);

Under federal dilution law, an owner of a "famous, distinctive mark" is entitled to an "injunction against the user of a mark that is 'likely to cause dilution' of the famous mark." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc*., 477 F.3d 765, 766 (2d Cir. 2007) (*per curiam*) (quoting 15 U.S.C. § 1125(c)(1)).  Dilution by blurring occurs where there is an "association arising from the similarity between a mark . . . and a famous mark that impairs the distinctiveness of the famous mark." *Urban Outfitters*, 935 F.Supp.2d at 1168 (quoting 15 U.S.C. § 1125(c)(2)(B)). Dilution by blurring is likely when a non-famous mark wholly incorporates a famous mark as an element and the respective marks need not be identical regarding a likelihood of dilution. *See, e.g., Perfumebay.com Inc. v. eBay Inc*., 506 F.3d 1165 (9th Cir. 2007) (PERFUMEBAY likely to dilute EBAY).[7]

---

[7]  *See also Visa Int'l Serv. Ass'n v. Jsl Corp*., 533 F. Supp. 2d 1089 (D. Nev. 2007) (EVISA likely to dilute VISA); *Nike, Inc. v. Nikepal Int'l, Inc*., 2007 U.S. Dist. LEXIS 66686 (E.D. Cal. Sept. 7, 2007) (NIKE diluted by NIKEPAL); *Thane Int'l v. Trek Bicycle Corp*., 305 F.3d 894, 907 (9th Cir. 2002) (upholding dilution claim because reasonable fact finder could find that ORBITREK likely to dilute TREK).

"Relevant factors" the Court may consider in determining whether a mark or trade name is likely to cause dilution by blurring include "(1) the degree of similarity between the mark or trade name and the famous mark; (2) the degree of inherent or acquired distinctiveness of the famous mark; (3) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (4) the degree of recognition of the famous mark; (5) whether the users of the mark or trade name intended to create an association with the famous mark; and (6) any actual association between the mark or trade name and the famous mark." 15 U.S.C. § 1125(c)(2)(B) (emphasis added).

Defendants contend that Intel has not sufficiently addressed the dilution factors listed in §1125(C) and because Intel has not addressed the issues of similarity.  However, the dilution factor list—similar to the list used to consider likelihood of confusion—is not an exhaustive list, and certain factors may prove relevant in any action. *See Urban Outfitters, Inc.,* 935 F. Supp. 2d at 1156 ("A court may consider all <u>relevant factors</u> including the duration, extent, and geographic reach of advertising and publicity of the mark; the amount, volume, and geographic extent of sales of goods offered under the mark; the extent of actual recognition of the mark; and whether the mark is registered on the principal register") (emphasis added).   The Complaint states:

- Intel alleges that the INTEL mark is famous (Complaint, ¶¶ 15-21);

- Intel's alleges that the general consuming public widely recognizes the INTEL trademark (Complaint, ¶ 16);

- Intel alleges Defendants' intent to create an association with the INTEL trademark (Complaint, ¶¶27, 34, 35, 37);

- Intel alleges that Defendants' "unauthorized use of the FLICK INTEL trade name and FLICKINTEL trademark will likely have an adverse effect upon the value and distinctive quality of the INTEL mark." (Complaint, ¶ 50); and

- Intel alleges that the marks FLICK INTEL and FLICKINTEL are sufficiently similar to INTEL (see discussion on similarity, above).

These assertions surely meet the plausibility requirements under *Twombly* in order to withstand dismissal under Rule 12(b)(6).

Based on the foregoing discussion, Defendants' motion is DENIED with regard to Plaintiff's federal trademark infringement claims.

**V.     Plaintiff's State Law Claims**

Intel alleges a claim for trademark dilution in violation of the New Mexico Trademark Act (NMSA 1978, §57-3B-15) (Count IV); for trademark infringement under New Mexico Common Law (Count V); and a violation of the New Mexico Unfair Practices Act, NMSA 1978, 57-12-1 (Count VI) ("Unfair Practices Act"). Defendants contend that Plaintiff has failed to allege state trademark claims under any of these theories.

A.     <u>New Mexico Trademark Act, NMsa 1978, § 57-3B-15</u>

In Count IV, Intel asserts that:

> The INTEL mark is a famous and distinctive mark in the State of New Mexico by virtue of its extensive use and promotion in the state. The extensive publicity and merchandising for the mark and the innovation of Intel's goods and services identified by the INTEL mark have created strong, widespread recognition of the mark in the State of New Mexico.

Complaint, ¶ 52.   The New Mexico Trademark Act provides for a "system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection. . . ."  NMSA 1978 §57-3B-2.   The federal trademark act is considered "persuasive authority for interpreting and construing" the state Trademark Act.  *Id.* Defendants seek dismissal of this state law claim for the same reasons for which they seek dismissal of Plaintiff's federal claims.  However, because Plaintiff's federal claims survive a Rule 12(b)(6) inquiry, Intel's state law claim under §57-3B-2 also survives.

B.     <u>Common Law Trademark Infringement</u>

Next, Defendants contend that Intel fails to allege a common law trademark claim because Intel has not alleged "what classes of goods or service are covered if Intel is claiming a monopoly within New Mexico on the use of the five character string "intel." Doc. 16 at 12. The Court finds no requirement that a plaintiff must allege a monopoly in order to assert a common law trademark infringement claim. Under common law, the trademark rules are part of the law of unfair competition and the right to a trademark grows out of use and not out of the adoption of a trademark. *Value House v. Phillips Mercantile Co.*, 523 F.2d 424, 430 (10th Cir. 1975) ("There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed") (citation omitted). The initial user may obtain protection under trademark principles on the basis of a likelihood of confusion. *Id.*

The Court has already determined that the Complaint includes enough assertions regarding likelihood of confusion to withstand dismissal, and has also determined that Plaintiff has adequately identified the goods or service in connection with the alleged infringing mark. *See* Complaint, ¶ 1 ("unauthorized use of the trade name and trademark FLICKINTEL in connection with the use and licensing of technology for linking on-screen items to data sources and remote applications for use with computers, televisions, and mobile phones, among other devices . . . ."). Thus, Defendant's motion is denied on this claim as well.

C.      New Mexico Unfair Practices Act, NMSA 1978, §57-12-1

Intel alleges that:

> Flick Intel and the Flick Intel Members have engaged in unfair and deceptive trade practices in violation of the New Mexico Unfair Practices Act through their willful and deliberate use of the FLICK INTEL trade name and FLICKINTEL trademark in the sale, offering for sale, distribution, and advertising of Flick Intel goods and services in the regular course of trade or commerce in a manner that tends to and does deceive and mislead the public by causing confusion or

> misunderstanding as to the source, sponsorship, approval, or certification of Flick Intel goods or services, in violation of NMSA 1978, § 57-12-2(D)(5).

Complaint, ¶ 64. Plaintiff also alleges that Defendants "made false or misleading representations" by using the FLICK INTEL trade name and trademark "in the sale, offering for sale, distribution and advertising of the Flick Intel goods and services in the regular course of its trade or commerce with knowledge that it would cause confusion or misunderstanding as to affiliation, connection or association with Intel, Intel's licensees, or the goods and services of Intel and Intel's licensees, in violation of NMSA 1978, § 57-12-2(D)(2)-3)." Complaint, ¶ 65.

Defendants claim that Intel has failed to state a claim for the same reasons they allege it has not stated its federal infringement and dilution claims. Since the Court has rejected Defendants' arguments with regard to those claims, the motion is denied on this count as well.

## VII. Individual Liability

Last, Defendants contend that Intel fails to state a claim against the FlickIntel members, Richard Krukar, Luis Ortiz and Kermit Lopez ("Krukar, Ortiz and Lopez") based on the language of NMSA §53-19-13, which addresses the liability of members and managers of a limited liability company to third parties and states in relevant part:

> No member or manager of a limited liability company . . . shall be obligated personally for any debt, obligation or liability of the limited liability company solely by reason of being a member or manager of the limited liability company or having authority pursuant to the Limited Liability Company Act to wind up the company's business and affairs following its dissolution. **A person may be liable for any act or omission performed in his capacity as a manager of a limited liability company if there is a basis for liability. Nothing in this section shall be construed to immunize any person from liability for the consequences of his own acts or omissions for which he otherwise may be liable.**

§53-19-13 (emphasis added). Defendants claim that Intel has not sufficiently alleged facts under any theory that could shift or place liability on the FlickIntel members. However, Defendants must have overlooked the last part of the statute's language, because that language

expressly states that a person acting as manager of a limited liability company is **not** immunized from liability for actions taken by that person.  The Complaint names Krukar, Ortiz and Lopez both individually as well as agents of Flick Intel, LLC, and alleges that these individuals participated in and/or supervised, directed and controlled the activities conducted by Flick Intel; that they derived direct financial benefits from the alleged activities; that these individuals are using the FLICK INTEL trade name and trademark in connection with the sale of Flick Intel's products and services; that they made "false or misleading representations of association or endorsement"; and that they did so willfully, deliberately and without authorization by INTEL. *See* Complaint, ¶¶9-11; 13, 14, 36, 37, 65.

The Court finds that these allegations form plausible theories of liability against these individuals and thus, Defendants' motion is denied on this issue.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Complaint **(Doc. 16)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE